IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN MURPHY, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LASTPASS US LP and GOTO TECHNOLOGIES USA, INC.,<br><br>Defendants. | Case No. 1:23-cv-00627 |

## NOTICE OF REMOVAL

Defendants LastPass US LP ("LastPass") and GoTo Technologies USA, Inc. ("GoTo") (collectively, "Defendants") file this Notice of Removal, in accordance with 28 U.S.C. §§ 1332, 1441, 1446 and 1453, to remove this action filed by Plaintiff Alan Murphy, Jr. ("Plaintiff") from the Circuit Court of Cook County, Illinois, Case No. 2022CH12414, to the United States District Court for the Northern District of Illinois, Eastern Division.  In support of removal, Defendants state as follows:

### NATURE OF THE REMOVED ACTION

1.      On December 27, 2022, Plaintiff filed a Class Action Complaint ("Complaint") in the Circuit Court of Cook County, Illinois, Case No. 2022CH12414, against Defendants (the "State Court Action").[1]  A true and correct copy of the Complaint is appended hereto as **Exhibit A**.

---

[1] Based on a review of the docket, it appears that Plaintiff filed an amended complaint on January 25, 2023, but Defendants have not been served with, nor have a copy of, the amended complaint.

2.      This putative class action arises out of an August 2022 data security incident involving Defendants' third-party cloud storage service (the "Incident").  *See* Defendants' Notice, *available at* https://blog.lastpass.com/2022/12/notice-of-recent-security-incident (last visited Jan. 30, 2023).

3.      This action is the second-filed of currently six putative class actions pending against one or both Defendants on behalf of a purported class of individuals whose personal information was allegedly subject to unauthorized access as a result of the Incident.  The other five cases are, by filing date: (i) *Debt Cleanse Group Legal Services, LLC v. GoTo Technologies USA, Inc. and LastPass US LP*, No. 1:22-cv-12047-PBS (D. Mass. filed Dec. 2, 2022); (ii) *John Doe v. LastPass US LP*, No. 1:23-cv-10004-PBS (D. Mass. filed Jan. 3, 2023); (iii) *Steven Carter v. LastPass US, LLC*, No. 1:23-cv-10092-DJC (D. Mass. filed Jan. 13, 2023); (iv) *R. Andre Klein v. LastPass US LP and GoTo Technologies USA, Inc.*, No. 1:23-cv-10122-PBS (D. Mass. Jan. 18, 2023); and (v) *John Doe v. LastPass US, LLC, and GoTo Technologies USA, Inc.*, No. CGC-23-604214 (Super. Ct. S. F. Cnty., Cal., filed Jan. 25, 2023).

4.      Similar to all of the other putative class actions, the Complaint here alleges that Defendants "failed to safeguard the confidential personal identifying information of Plaintiff Alan Murphy, Jr. ('Plaintiff') and *millions of individuals* ('Class Members' or collectively as the 'Class')."  (Ex. A ¶ 1, emphasis added.)  Plaintiff further alleges that his and Class Members' "personally identifiable information ('PII', or 'Private Information') was stolen by cybercriminals in a cyber-attack that accessed sensitive information through the Defendants' computer system."  (*Id.*)  Plaintiff alleges that Defendants "failed to take reasonable steps to employ adequate security measures or to properly protect sensitive Private Information . . . ."  (*Id.* ¶ 3.)  And Plaintiff

contends that "Defendants' Data Breach compromised the Private Information of *millions (if not more) of Individuals*." (*Id.* ¶ 7, emphasis added.)

5.	Plaintiff seeks to certify a class of "[a]ll individuals whose PII was exposed while in the possession of Defendants, or any of its subsidiaries and/or agents, during the Data Breach." (*Id.* ¶ 59.) Plaintiff contends that the putative class is comprised of "millions of persons." (*Id.* ¶ 62.)

6.	Plaintiff alleges that, as a result of Defendants' acts or omissions, he and the putative class have suffered "direct theft, identity theft, expenses for credit monitoring and identity theft herein, insurance incurred in mitigation, out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm, for which they suffered loss and are entitled to compensation." (*Id.* ¶¶ 74, 79; *see* ¶ 89.) Additionally, Plaintiff alleges that he and putative class members lost the benefit of their bargain with Defendants. (*Id.* ¶ 105.)

7.	Plaintiff asserts claims on behalf of himself and a putative class of millions of individuals against Defendants for negligence, invasion of privacy, breach of (express) contract and breach of implied contract, and seeks compensatory damages, including restitution and disgorgement, punitive damages, declaratory and injunctive relief, and attorneys' fees. (*Id.* ¶¶ 74, 78, 90, 105.)

8.	In accordance with 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice as Exhibits A-B.

## TIMELINESS OF REMOVAL

9.	Plaintiff served the Complaint and Summons on the registered agent for GoTo on January 4, 2022, although LastPass was the defendant listed on the Summons. A true and correct copy of the Affidavit of Service is attached hereto as **Exhibit B**.

10. This removal is timely because Defendants filed this removal within 30 days of Plaintiff's attempted service of the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## PROPRIETY OF VENUE

11. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. As such, this Court is the proper district court to which this case should be removed. *See* 28 U.S.C. §§ 1441(a), 1446(a).

## GROUNDS FOR REMOVAL

12. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332. First, removal is proper under § 1332(a)(1) based on "diversity-of-citizenship" jurisdiction. Second, removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

## DIVERSITY-OF-CITIZENSHIP JURISDICTION

13. **Basis of Original Jurisdiction.** The Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1). Section 1332(a)(1), *i.e.*, "diversity-of-citizenship" jurisdiction, "gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting 28 U.S.C. § 1332(a)(1)) (omission in original). For the reasons set forth below, in accordance with 28 U.S.C. § 1332(a)(1) and § 1441(a), Defendants may remove the State Court Action to this Court under "diversity-of-citizenship" jurisdiction because (1) this is a civil action between citizens of different states; (2) none of the properly joined and served defendants is a citizen of the forum state; and (3) the amount in controversy is more than $75,000.

4

*See Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 933 (N.D. Ill. 2017) (citing 28 U.S.C. §§ 1332, 1441).

14. **GoTo, LastPass, and Plaintiff are Citizens of Different States.**  Diversity-of-citizenship jurisdiction requires "'complete diversity of citizenship of the litigants.'" *E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015) (quoting *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a))); *accord Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). "'Complete diversity of citizenship exists where no defendant holds citizenship of the same state where any plaintiff holds citizenship.'" *Id.*  Further, in the context of a class action suit, the citizenship of nonnamed class members is not considered (and therefore cannot defeat) complete diversity pursuant to § 1332(a). *See Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002).

15. For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(l). GoTo is a Delaware corporation with its principal place of business in Massachusetts. (Ex. A ¶ 15.)  As such, GoTo is a citizen of Delaware and Massachusetts.

16. For purposes of diversity jurisdiction, "(1) [A] limited partnership may be considered in its own right a 'citizen' of the State that created it, or (2) a federal court must look to the citizenship of only its general, but not its limited, partners to determine" citizenship. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990).  LastPass is a limited partnership organized under Delaware law with its principal place of business in Boston, Massachusetts. (Ex. A ¶ 14.)  Its only general partner is John Joseph Markey II of Boston, Massachusetts.  (*See* LastPass filings with Massachusetts Secretary of State, appended hereto at Tab C (and online at Massachusetts Secretary

of State, Corporations Division website, available at https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchViewPDF.aspx). As such, LastPass is a citizen of Delaware and Massachusetts.

17. As alleged in the Complaint, Plaintiff resides in Florida. (*Id.* ¶ 13.)

18. Because Defendants are citizen of Delaware and Massachusetts and Plaintiff is a citizen of Florida, complete diversity exists because no defendant is a citizen of the same state as any named plaintiff. Thus, the first diversity-of-citizenship element is satisfied. *See Graff*, 299 F. Supp. 3d at 933 (requiring "complete diversity" of citizenship for purposes of diversity jurisdiction).

19. **<u>Defendants Are Not Citizens of Illinois, the Forum State.</u>** The second diversity-of-citizenship element provides that a state court action "shall be removeable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir. 2000) (quoting 28 U.S.C. § 1441(b)) (internal quotations omitted). Because LastPass and GoTo are not citizens of Illinois, the forum state, the second diversity-of-citizenship element is also satisfied.

20. **<u>The Amount in Controversy Exceeds $75,000.</u>**[2] It is the "party seeking to invoke federal diversity jurisdiction . . . [that] bears the burden of demonstrating that the . . . amount in controversy requirement[] [is] met." *Chase v. Shop "'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). Typically, the court looks to the complaint for amount in controversy,

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $75,000 or $5,000,000 amount-in-controversy thresholds (for diversity-of-citizenship jurisdiction and/or CAFA jurisdiction, respectively), and are not intended and cannot be construed as an admission that Plaintiff or putative class members can state or have stated a claim that they are entitled to damages in any amount. Defendants deny liability, deny Plaintiff and/or class members are entitled to recover any amount, and deny that a class can be properly certified in this matter.

but where it is unclear, "the district court may look outside the pleadings to other evidence of jurisdictional amount in the record." *Id*. at 428.

21. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87. In determining whether the amount in controversy is satisfied, the Court may consider compensatory and statutory damages, as well as punitive damages. *See Garbie v. Chrysler Corp.*, 8 F. Supp. 2d 814, 819 (N.D. Ill. 1998).

22. Moreover, courts can "measure the amount in controversy by the value of the right sought to be enforced" when injunctive relief is sought, and "[i]n so measuring, courts may consider the cost of enforcing the right." *Stein v. Sprint Commc'ns Co., L.P.*, 968 F. Supp. 371, 377 (N.D. Ill. 1997) (citations omitted).

23. Where, as here, the complaint does not establish a specific amount-in-controversy, a "good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Once the removing party establishes the amount in controversy, "the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938)).

24. Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages he allegedly sustained as a result of Defendants' alleged conduct. Nevertheless, Plaintiff's requested relief supports a finding that the amount in controversy exceeds the $75,000 amount-in-controversy threshold. For tort and contract claims, compensatory

damages and injunctive relief are generally available. *See, e.g., Wills v. Foster*, 229 Ill. 2d 393, 401, 892 N.E.2d 1018, 1023 (2008).

25.  <u>Legal Claim for Damages.</u>  Here, Plaintiff brings claims for negligence, invasion of privacy by public disclosure of private facts and intrusion upon seclusion, breach of contract, and breach of implied contract.  (Ex. A ¶¶ 69-105.)

26.  Specifically, Plaintiff alleges injury as a "direct and proximate result of Defendants' [allegedly tortious conduct] including, *inter alia*, direct theft, identity theft, expenses for credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm, for which they are entitled to compensation."  (*Id.* ¶¶ 74, 79.)

27.  In addition, Plaintiff alleges that as a result of Defendants' purported breaches of contract (express or implied), that he has "suffered a variety of damages including but not limited to: the lost value of [his] privacy; not getting the benefit of [his] bargain with Defendants; the lost difference in the value between the secure services Defendants promised and the insecure services received; the value of the lost time and effort required to mitigate the actual and potential impact of the data breach on [his] li[fe], including, inter alia, to close or modify financial and medical accounts, and to closely review and monitor credit reports an various accounts for unauthorized activity."  (*Id.* ¶ 89.)  Plaintiff also contends that he now faces an "increased risk of future identity theft, fraud, and/or misuse of [his] Private Information, which may take years to manifest, discover, and detect."  (*Id.*; *see* ¶¶ 103, 105.)

28.  In short, for both his tort and contract claims, Plaintiff seeks damages to redress "years of constant" harms to come.  (Ex. A ¶ 53.)  Included in his claims for damages are restitution, unjust enrichment, and disgorgement.  (*Id.* ¶ 90; *see also* Prayer for Relief.)

8

Disgorgement-type damages can be considered when calculating the amount in controversy. *See Oshana*, 472 F.3d at 512.

29. Further, Plaintiff expressly pleads to recover punitive damages based on Defendants' purported willful and wanton disregard for safeguarding his Private Information and intentional invasion of his privacy. (Ex. A ¶¶ 3-4, 6, 9, 41-46.) Punitive damages may also be considered when calculating the amount-in-controversy, provided they are recoverable as a matter of state law. *See Garbie*, 8 F. Supp. 2d at 819. Under the law of the forum, punitive damages are recoverable upon a showing of willful and wanton misconduct, *see Brady for Smith v. SSC Westchester Operating Co. LLC*, 533 F. Supp. 3d 667, 673 (N.D. Ill. 2021), and can be as much as double the compensatory damages award. *In re Collazo*, 613 B.R. 650, 666 (N.D. Ill. 2020).

30. Besides damages, Plaintiff seeks to recover prejudgment interest, costs and attorneys' fees and all "other and further relief as this Court deems just and proper." (Ex. A, Prayer for Relief.) Attorneys' fees up to the time of removal also count towards the jurisdictional amount. *See Oshana*, 472 F.3d at 512.

31. <u>Prayer for Injunctive and Declaratory Relief.</u> Plaintiff seeks injunctive relief including enjoining "the wrongful acts and omissions complained of… pertaining to the misuse and/or disclosure of Plaintiff's and Class Members Private Information." (*Id.*, Prayer for Relief.) Additionally, he seeks "(i) adequate credit monitoring, (ii) adequate identity theft insurance, (iii) instituting security protocols in compliance with the appropriate standards and (iv) requiring the Defendants to submit to periodic compliance audits by a third party regarding the security of personal identifying information in its possession, custody and control." (*Id.*, Prayer for Relief.)

32. These purported costs to benefit Plaintiff must also be considered in determining the amount-in-controversy. *See W. Bend Elevator, Inc. v. Rhone-Poulenc S.A.*, 140 F. Supp. 2d

963, 969 (E.D. Wis. 2000) (noting it is proper to consider defendant's cost of complying with an injunction in determining amount in controversy).

33. Based on the above, the cost of injunctive relief, combined with Plaintiff's potential to recover general damages, punitive damages, and attorneys' fees, demonstrate that the amount in controversy exceeds the $75,000 threshold for diversity-of-citizenship jurisdiction.

34. Accordingly, Defendant may remove the State Court Action to this Court under "diversity-of-citizenship" jurisdiction because (1) diversity of citizenship exists between the parties; (2) Defendants are not citizens of Illinois, the forum state; and (3) the amount in controversy exceeds $75,000.

## CAFA SUBJECT MATTER JURISDICTION

35. **Basis of Original Jurisdiction**. This Court also has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d)(1)-(2)(A); *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021).

36. As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Defendant may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative nationwide class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of Defendants; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs. *See Ware*, 6 F.4th at 733.

37.     **This Action Is Pled as a Class Action.**  CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'"  28 U.S.C. § 1332(d)(1).

38.     Plaintiff brings this action as a "class action" and seek class certification under Illinois pursuant to 735 ILCS 5/2-801.  (Ex. A ¶ 61.)  Because Illinois's Rule is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the first CAFA element is satisfied.  28 U.S.C. § 1332(d)(1); *see also Lee v. Buth-Na-Bodhaige, Inc.*, 2019 IL App (5th) 180033, 143 N.E.3d 645, 653 n. 6 (2019) ("[T]he Illinois class action statute (735 ILCS 5/2-801 *et seq.* . . .) was patterned after Rule 23 of the Federal Rules of Civil Procedure. Therefore, to the extent federal decisions related to the interpretation of Rule 23 are persuasive, we have considered the reasoning of our federal colleagues with regard to the issues raised herein.") (citations omitted).

39.     **The Putative Class Includes At Least 100 Members.**  Plaintiff purports to bring this action on behalf of himself and all others similarly situated, including "[a]ll individuals whose PII was exposed while in the possession of Defendants, or any of its subsidiaries and/or agents, during the Data Breach."  (Ex. A ¶ 59.)

40.     Plaintiff asserts that "[t]he putative Class is comprised of millions of persons."  (*Id.* ¶ 62.)  Additionally, Plaintiff asserts that "[t]he Class can be identified through the Defendants' records or the Defendants' agents' records."  (*Id.*)

41.     Thus, as pled, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.

42.     **"Minimal Diversity" of Citizenship Exists.**  Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."  *See also Dart*, 574 U.S. at 84-85.

43.     As stated above (*supra* ¶¶ 15-17), Defendants are citizens of Delaware and Massachusetts, and Plaintiff is a citizen of Florida.  Thus, because there is complete diversity between Plaintiff and Defendants, there is also minimal diversity.

44.     **The Amount in Controversy Exceeds the CAFA Threshold.**[3]  CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).  The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement.  *See id.* § 1332(d)(6).

45.     The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart*, 574 U.S. at 89.  "'Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.'"  *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 858 (7th Cir. 2022) (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005)).

46.     In determining whether the amount-in-controversy requirement is satisfied, the Court may consider various pieces of evidence, including "the complaint's allegations, the

---

[3] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendants deny liability, deny Plaintiff is entitled to recover any amount, and deny that a class can be properly certified in this matter.

plaintiff's informal estimates, affidavits from employees or experts, or other sources." *Id.* at 854. "In addressing such issues about amounts in controversy, it is critical for courts to focus on the phrase 'in controversy' and to remember the difference between even highly unlikely results and truly impossible results, and to avoid prematurely trying the merits of the case in deciding jurisdiction." *Id.*

47. The Complaint does not specify the amount of damages Plaintiff and putative class members seek in this action. But the pleaded allegations demonstrate that the putative class members' claims, in the aggregate, exceed the sum or value of $5 million, exclusive of interest and costs.

48. According to the Complaint, "millions (if not more) of Individuals" were affected by the Incident and comprise the putative class. (Ex. A ¶¶ 1, 7, 27, 62.) Assuming "millions" means at least 2 million individuals, then the Complaint need only plausibly show an amount-in-controversy of more $2.50 per class member to meet the $5 million jurisdictional threshold. And the allegations in the Complaint plainly meet this threshold.

49. As stated above, Plaintiff brings claims on behalf of himself and a putative class for negligence, invasion of privacy by public disclosure of private facts and intrusion upon seclusion, breach of contract, and breach of implied contract. (*Id.* ¶¶ 69-105.) He seeks, among other relief (including punitive damages), compensatory damages for "direct theft, identity theft, expenses of credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other economic ad non-economic harm." (*Id.*, ¶¶ 48, 54, 74, 79, Prayer for Relief.) And he seeks injunctive relief in the form of credit monitoring, identity theft insurance, and other business process changes to be made by Defendants. (*Id.*)

50.     Focusing only Plaintiff's claims for credit monitoring, the three main identity-protection agencies—Equifax,[4] LifeLock,[5] and Experian[6]—advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month.  For example, LifeLock offers a product, titled Norton360 with LifeLock, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month.  Similarly, both Equifax and Experian offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 per month.  Taking the least expensive product (at $8.99 per month), which costs $107.88 annually, the costs of providing just one month of credit monitoring to at least 2 million individuals alleged to be in the putative class would be $17,980,000, notwithstanding that Plaintiff alleges that the putative class "now face years of constant surveillance of their financial and personal records [and] monitoring." (Ex. A ¶ 53.)

51.     Indeed, in data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements.  *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 WL 4051265, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12-cv-2166, 2013 WL 1869618, at *5-7 (N.D.

---

[4] *See* https:// https://www.equifax.com/personal/ (last visited Jan. 30, 2023).
[5] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited Jan. 30, 2023).
[6] *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606 (last visited Jan. 30, 2023).

14

Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same). Thus, the Complaint's request for damages and injunctive relief for credit monitoring costs alone puts more than $5 million in controversy in this case.

52. Moreover, Plaintiff alleges that he and the class have suffered expenses for identity theft, including insurance. (Ex. A ¶ 48.) He alleges that identity theft "costs Americans billions of dollars a year" and costs "hundreds of hours dealing with the crime, and they typically lose hundreds of dollars." (*Id.* ¶ 32.) Assuming each putative class member can demonstrate such a time spent and identity theft, damages would exceed $200 million (at $100 per individual for 2 million individuals).

53. Defendants also offer premium service plans for individuals and businesses starting at $3 and $4 per month, respectively. (*See* LastPass website, *available at* https://www.lastpass.com/pricing (last visited Jan. 30, 2023). If "millions of individuals" in the putative class signed up for services at $3 per month, then disgorgement (or restitution) of just one month of service revenues received from them would be $6 million (assuming 2 million individuals paid $3 for one month of service). *See Oshana*, 472 F.3d at 512 (including disgorgement damages when calculating the amount in controversy).

54. Further, Plaintiff seeks injunctive and declaratory relief requiring untold changes to Defendants' cybersecurity practices, such as "instituting security protocols in compliance with the appropriate standards" and "requiring Defendants to submit to periodic compliance audits by third parties." (Ex. A, Prayer for Relief.) These purported costs must also be considered in determining the amount-in-controversy. *See Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 847-48 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits *that would*

15

*logically flow* from the granting of the declaratory relief sought by the claimants. For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.") (emphasis in original).

55. Finally, Plaintiff seeks an award of punitive damages on behalf of himself and the putative class based on Defendants' purported willful and wanton disregard for safeguarding his Private Information and intentional invasion of his privacy. (Ex. A. ¶¶ 3-4, 6, 9, 41-46.) The potential to recover class-wide punitive damages is also included within the amount-in-controversy. *See Tedesco v. State Farm Fire & Cas. Co.*, 599 F. Supp. 3d 750, 759 (N.D. Ind. 2022); *Brady for Smith,* 533 F. Supp. 3d at 673.

56. Based on the minimum compensatory damages for credit monitoring costs calculated above, potential additional punitive damages awarded to the class here could also exceed the CAFA amount-in-controversy minimum. And combined with Plaintiff's other damages, the CAFA amount-in-controversy threshold is met here. *See, e.g., Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 632 (4th Cir. 2007) (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction") (quotation omitted); *see also, e.g., Thomas v. FIA Card Servs., Nat'l Assoc.*, No. 5:14-CV-79, 2014 WL 4954389, at *3 (N.D. W. Va. Oct. 2, 2014) (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted); *Kates v. Chad Franklin Nat'l Auto Sales N. LLC*, No. 08–0384–CV–W–FJG, 2008 WL 3065009, at *2 n.5 (W.D. Mo. July 30, 2008) ("The Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold" of CAFA.).

57. Thus, because the case is pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Defendants have properly removed the State Court Action to this Court.

## **EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY**

58. "Three enumerated exceptions to the exercise of CAFA jurisdiction exist[]: the 'local controversy' and 'home state controversy' are mandatory exceptions; whereas the 'interests of justice' exception is discretionary." *Brook v. UnitedHealth Grp. Inc.*, No. 06-cv-12954 (GBD), 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007); *see* §§ 1332(d)(3)-(4); *Schutte*, 28 F.4th at 858 n.4.

59. It is "the party seeking to take advantage of the [] exception to CAFA jurisdiction [that] has the burden of showing that it applies." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 680 (7th Cir. 2006); *accord Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012).

60. "Under [the local controversy or home state] exceptions, [a plaintiff has] the burden of persuasion on whether two-thirds or more of the members of the proposed class and the primary defendants are citizens of the original filing state." *Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1012 (S.D. Ill. 2020) (citations omitted); *see* 28 U.S.C. § 1332(d)(4)(A)-(B). Here, Defendants are each a citizen of Delaware and Massachusetts (*supra* ¶¶ 15-16 ), not Illinois; thus, neither exception applies.

61. Moreover, the local controversy exception does not apply because "during the 3-year period preceding the filing of [this] class action, [] other class action[s] ha[ve] been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . ." 28 U.S.C. § 1332(d)(4)(A)(ii). Before this action was filed, on December

17

2, 2022, a substantially similar putative class action was commenced against Defendants in the United States District Court for the District of Massachusetts, captioned, *Debt Cleanse Group Legal Services LLC v. GoTo Technologies USA, Inc. and LastPass US LP*, No. 1:22-cv-12047-PBS, asserting allegations and claims on behalf of a putative class of "[a]ll persons who had their Customer Information accessed in the Data Breach[,]" for negligence, negligent misrepresentation, breach of contract, and unjust enrichment. (No. 1:22-cv-12047-PBS, ECF No. 1 ¶¶ 46, 53-80.)

62. For the same reasons, the discretionary—sometimes referred to as the "interests of justice"—exception to CAFA jurisdiction does not apply here. The discretionary exception is codified under 28 U.S.C. § 1332(d)(3) and provides a district court with the discretion to decline jurisdiction where, as a threshold matter and among other factors, "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate" and "the primary defendants are citizens of the State in which the action was originally filed." Again, Defendants are not Illinois citizens; thus, this discretionary exception does not apply.

63. In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

## NOTICE

64. As required by 28 U.S.C. § 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court of Cook County, Illinois.

WHEREFORE, Defendants remove the State Court Class Action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois.

Dated: February 1, 2023　　　　　　　　By: */s/ Aaron D. Charfoos*
　　　　　　　　　　　　　　　　　　　　Aaron Charfoos
　　　　　　　　　　　　　　　　　　　　Illinois Bar No. 6277242
　　　　　　　　　　　　　　　　　　　　aaroncharfoos@paulhastings.com
　　　　　　　　　　　　　　　　　　　　**PAUL HASTINGS LLP**
　　　　　　　　　　　　　　　　　　　　71 S. Wacker Dr., Suite 4500
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　　　Tel: (312) 499-6000
　　　　　　　　　　　　　　　　　　　　Fax: (312) 499-6100

　　　　　　　　　　　　　　　　　　　　*Attorney for Defendants LastPass US LP and GoTo Technologies USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, a true and correct copy of the foregoing **Notice of Removal** was electronically filed with the Court using CM/ECF and was served on the following parties by electronic mail with arrangements made for courtesy copies to be sent out by pre-paid, first-class U.S. Mail at the addresses listed below:

Bryan Paul Thompson
Robert W. Harrer
**Chicago Consumer Law Center, P.C.**
33 N. Dearborn St., Suite 400
Chicago, IL 60602
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

Michael Kind
**Kind Law**
8860 S. Maryland Parkway, Suite 106
Las Vegas, NV 89123
mk@kindlaw.com

This 1st day of February, 2023.

        */s/ Aaron D. Charfoos*
        Aaron Charfoos
        Illinois Bar No. 6277242